## McMURREY v. LAMPKINS et al.
### No. 2220.

Court of Civil Appeals of Texas. Beaumont.

March 24, 1932.

Wm. McMurrey, of Coldspring, for plaintiff in error.

E. W. Love, of Cleveland, for defendants in error.

O'QUINN, J.

There seems to have been some misunderstanding as to what this suit involved. Plaintiff in error states the suit to be one in trespass to try title to certain land, filed by defendants in error, to which he answered and set up a cross-action for judgment on and foreclosure of certain vendor's lien notes executed by defendant in error Jim Lampkins in payment for the land in question, payable to the order of plaintiff in error. Defendants in error state the suit was for the cancellation of the notes mentioned in the cross-action of plaintiff in error, alleged to have been executed under duress. The judgment awards the cancellation of the notes and the title to the land to defendants in error.

The suit was instituted by defendants in error, Jim Lampkins and his wife, Lizzie Lampkins. Their original petition was filed in the district court of San Jacinto county on October 14, 1926, against Mrs. Eliza Beatrice Hansen of Harris county, and Wm. McMurrey of San Jacinto county, and was in trespass to try title to 110 acres of land, a part of the Ruth Miller league in San Jacinto county. It alleged that on December 1, 1921, they were lawfully seized and possessed of said land, and that on said date the named defendants unlawfully ejected them from said land and unlawfully withholds same from them. They assert a title to the land by virtue of the ten-year statute of limitation. January 31, 1927, the defendants in error, Lampkins, filed their first amended original petition in which they pleaded as before, and made the further allegation that on December 7, 1921, plaintiff in error, Wm. McMurrey, represented to them that he was the owner of the land in question, and that his title to same was superior to theirs, and that, if they would purchase of him the land, he would make them a good and sufficient title to same; that, acting upon said representations, the said Jim Lampkins purchased the land from said McMurrey for a consideration of $1,500, for which he executed his five certain vendor lien notes, each in the sum of $300, numbered 1 to 5, bearing 9 per cent. interest from date, No. 1 due on December 7, 1922, and the others in numerical order on December 7th in the succeeding years; that said McMurrey executed and delivered a deed to said Jim Lampkins in which he reserved the merchantable pine timber on said land. They further alleged that the representations of said McMurrey that he could and would execute a good and sufficient deed to said land were a fraud on the rights of the defendants in error because he was not able to execute a good and sufficient title to said land, and well knew so at the time he made to them

such representations, and that said McMurrey made such representations for the purpose of obtaining possession of the timber on said land; that a few weeks after the execution of said deed they discovered the fraud of said McMurrey, and immediately repudiated the acceptance of said deed, and so notified the said McMurrey. They further alleged that the deed executed and delivered to Jim Lampkins by McMurrey was a cloud upon their title to said premises.

They further alleged that on November 8, 1926, by force, threats, and fraud, and by threats of taking the life of said Jim Lampkins, the said McMurrey, in company with his son, Julian McMurrey, acting together, forced the said Jim Lampkins "to sign some kind of instrument affecting the title to said land as same appears in plaintiffs"; that on said date said Wm. McMurrey met said Lampkins in the corridor of the courthouse at Cold Springs, San Jacinto county, Tex., and told him (Lampkins) that, if he did not sign the instrument handed to him by said McMurrey, they would take his life; that said acts were a fraud upon his (Lampkins') rights, and constituted a cloud on his title to said land. Their prayer was that they have judgment canceling the deed from McMurrey to Jim Lampkins, and canceling "the instrument executed on the 8th day of November, 1926," and judgment for the title and possession of the land.

The citation issued and served on McMurrey is in the transcript, and states the nature of the plaintiffs' demand to be "suit to try title and damages for a certain tract of land, being 110 acres of land more or less, a part of the Ruth Miller league. * * *"

The defendant below, Mrs. Hansen, answered by general demurrer, and plea of not guilty.

Defendant McMurrey answered by general demurrer, general denial of all the allegations in plaintiff's petition, except the allegations that he conveyed the land in question to Jim Lampkins for the recited consideration, which was admitted, but he denied any act of fraud towards Lampkins; pleaded not guilty, and specially that plaintiffs should not have judgment because at the time he conveyed the land to Lampkins he reserved the timber on said land, and that at the time of said conveyance he had good and perfect title to said land, and held same under a deed duly registered, and pleaded the five-year statute of limitations. By cross-action, defendant McMurrey alleged that on December 7, 1921, he conveyed to Jim Lampkins the land in controversy, excepting the merchantable pine timber on said land, for a consideration of $1,500, for which said Lampkins executed and delivered to him five vendor lien notes, each for the sum of $300, bearing 8 per cent. interest from date, numbered 1 to 5, due in their numerical order December 7, 1922,

to December 7, 1926, and each providing for the usual 10 per cent. attorney's fees, that all of said notes were due and unpaid, and that said Lampkins had refused and still refused to pay same, and that said vendor's lien so retained was in full force and effect, and prayed for judgment on said notes and for the foreclosure of said liens, etc.

The defendants in cross-action, the Lampkins, by supplemental petition, pleaded the four-year statute of limitation against the notes sued on in cross-action, and specially pleaded said statute in bar of recovery on note No. 1 due December 7, 1922. By amended supplemental petition, plaintiffs, defendants in error here, answered the cross-action against them by plea of the four-year statute of limitation against all of the notes sued on, and plea of total failure of consideration, because the title of said McMurrey who had conveyed the land to them had wholly failed, in that said McMurrey, at the time he so conveyed said land to them, did not have, nor has at any time since had, good title to the land, but that at the time McMurrey conveyed the land to them he represented to them that he had good title to the land, and that his deed executed to them conveyed good title to them, and that, believing said representations, they acted thereon and executed the notes; that said representations of said McMurrey were false and made to induce them to execute said notes, wherefore the considerations for said notes and deed had wholly failed. They further alleged that for more than ten years prior to said December 1, 1921, and at all times since, they had occupied the premises in question as their homestead, and that they had good title to same by virtue of the ten-year statute of limitation, as set forth in their amended original petition, and that they had not at any time executed a deed or any conveyance that was signed by Lizzie Lampkins and acknowledged by her, as required by law, and that any instrument purported to be signed by Jim Lampkins was obtained by fraud and duress and threats of bodily harm at the hands of McMurrey and his son, and were not the legal acts of said Jim Lampkins. They prayed as in their amended original petition.

The trial was to the court without a jury, and judgment was rendered canceling the notes sued on by McMurrey in his cross-action, and awarding the title and possession of the land in question to defendants in error. Nothing is said in the judgment about the deed from McMurrey to the Lampkins.

Plaintiff in error's contention that there is no evidence to support the finding that his title to the land in question, which he conveyed to defendant in error Jim Lampkins, had failed, by reason of which the vendor lien notes executed by said Lampkins in payment for the land were without consideration, and should be canceled, is sustained.

Plaintiff in error had a general warranty deed to the land of date December 28, 1911, duly recorded, and he conveyed the land to defendant in error by general warranty deed, which was accepted and placed of record, and there is neither pleading nor evidence to show that defendant in error's possession had been disturbed or his title assailed. But defendants in error say that McMurrey had made false and fraudulent statements to Jim Lampkins to induce him to purchase the land, in that he (McMurrey) told Lampkins that he (McMurrey) had good title to the land, and would convey good title to him (Lampkins), when in fact he had no title. There is no evidence to support a finding that McMurrey's title was not good, and there is no evidence that said statement was not true.

■ The assignment that the court's finding that the notes executed by Lampkins in payment for the land were executed under duress is without support in the evidence must be sustained. The notes were executed by Lampkins long (several years) before the occurrence in which Lampkins says McMurrey forced him to execute "some kind of instrument." There is no evidence in the record showing that the execution of the notes was procured by duress. The record, we think, is clear that the matter complained of by defendants in error as to the execution by Lampkins of "some sort of instrument" under duress related to an entirely different matter. When McMurrey conveyed the land in question to Jim Lampkins, he reserved the merchantable pine timber on the land, and a given time in which to remove same. The time for the removal of the timber was about to expire, and, as we understand the record, plaintiff in error wanted to make an agreement with Lampkins to extend the time for the payment of the notes, Lampkins not having paid any of them, and also to extend for the same period the time in which he could remove the timber. According to Lampkins, McMurrey, when Lampkins refused to make such agreement, by threats and assault compelled him to execute such agreement. It is attempted to make it appear that the instrument then executed under duress by Lampkins was a deed from Lampkins transferring the land back to McMurrey. No such instrument was ever executed, or contemplated to be executed. The matter occurring at the courthouse in November, 1926, testified to by Lampkins, when he executed "some kind of instrument," could not affect the transaction of 1921, when McMurrey conveyed the land to Lampkins, and Lampkins executed the notes to McMurrey, or afford grounds to cancel either the deed or the notes. So the court's finding that the vendor lien notes executed by Lampkins were executed under duress has no support in the facts, and the judgment canceling them was error.

■ The assignment that the court erred in decreeing the title to the land to defendants in error on their ten-year limitation claim (Rev. St. 1925, art. 5510), is sustained. The facts show that in December, 1911, McMurrey bought the land in question from Richard Knight and others claiming to be the heirs of Ruth Miller. At the time of his purchase he and J. G. Ross, at the request of Knight, went on the land to view and survey it. They found Jim Lampkins and his wife living on the land. Lampkins stated to them, McMurrey and Ross, that he had been on the land some three or four years, but that he did not claim it. Ross then drew up an acknowledgment of tenancy which was executed by Jim Lampkins, stating that he did not claim the land, and that he occupied the land as the tenant at will of Knight, describing the land by metes and bounds, and agreeing to vacate the premises when demanded. This was signed by Lampkins by affixing his mark. Ross, who was a notary public, took his acknowledgment to the instrument, but in doing so did not write Lampkins' name where it would usually appear. This tenancy acknowledgment was duly placed of record. When McMurrey bought the land, Lampkins remained on the land as his tenant. Nearly ten years later, on December 7, 1921, McMurrey sold the land to Lampkins, executed to him a general warranty deed, and took Lampkins' five promissory vendor's lien notes, each in the sum of $300, in payment. These are the notes herein involved. Lampkins instituted this suit October 14, 1926. His contention is that he had title to the land by the ten-year statute of limitations before he contracted to buy from McMurrey on December 7, 1921. The above-stated facts show that, though he had resided on the land for ten years prior to the date of his purchase from McMurrey, yet he was not claiming the land adversely, and so had no title by limitation, and the court erred in so adjudging.

But it is contended by defendants in error that the tenancy acknowledgment executed by Jim Lampkins December 29, 1911, could not be considered as evidence because it was not properly acknowledged for record. The acknowledgment reads:

"The State of Texas, County of San Jacinto.

"Before me J. G. Ross, a notary public in and for San Jacinto County, Texas, on this day personally appeared ———, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.'

"Given under my hand and seal of office this the 29th day of December, A. D. 1911.

"J. G. Ross, Notary Public, in and for San Jacinto County, Texas."

854

The court sustained an objection to the introduction of this instrument because it was not legally acknowledged. This was error. The acknowledgment is good. Besides, to be admissible between the parties it did not have to be acknowledged. 1 Tex. Jur. 417, § 8. Furthermore, the oral statement of Lampkins to McMurrey and Ross that he did not claim the land destroyed any limitation he might have had up to that time, and his acknowledgment of the tenancy to Knight, continuation in possession as such under McMurrey, and his acceptance of a deed to the land from McMurrey and occupying the land under it, shows him without limitation for any effective period.

We will now discuss plaintiff in error's cross-action for judgment on, and foreclosure of, his vendor's lien notes. Defendants in error pleaded that all of the notes were barred by the four-year statute of limitations. The notes were dated December 7, 1921, and fell due on December 7, 1922, December 7, 1923, December 7, 1924, December 7, 1925, and December 7, 1926. On August 3, 1927, plaintiff in error, by his cross-action, filed suit to recover on said five notes and to foreclose the vendor's lien retained in said notes and in the deed of December 7, 1921. The last four of the series of notes at the time the suit was filed were less than four years past due, but the first was more than four years past due. Under articles 5520 and 5521, R. S. 1925, this note was barred. Eastland Lodge No. 467 A. F. & A. M. v. Stubblefield (Tex. Civ. App.) 13 S.W.(2d) 123 (writ refused); McMullen & Co. v. Hammann (Tex. Civ. App.) 34 S.W.(2d) 909; Citizens' National Bank v. Graham, 117 Tex. 357, 4 S.W.(2d) 541. Plaintiff in error should have had judgment for the amount of the four notes, Nos. 2, 3, 4, and 5, $1,200, and interest on same from their date December 7, 1921, to the date of the judgment, September 15, 1931, at the rate of 8 per cent., amounting to $938.40, and the sum of $213.84 attorney's fees, as provided in said notes, aggregating $2,352.24, and 8 per cent. interest on this sum from the date of the judgment until paid, together with a foreclosure of the vendor's lien retained in said notes and said conveyance, and costs of suit. As the facts appear to have been fully developed, it is our duty to here render the judgment that should have been rendered by the trial court. Accordingly, the judgment of the trial court is reversed and judgment here rendered that defendants in error take nothing by their suit either as to the cancellation of said notes or as to the title to said land, and that plaintiff in error have judgment for the amount of his vendor lien notes Nos. 2, 3, 4, and 5, $1,200, with interest thereon from their date, December 7, 1921, at the rate of 8 per cent. per annum until the date of the judgment in the trial court, September 15,

1931, $938.40, and $213.84 attorney's fees, totaling the sum of $2,352.24, and judgment foreclosing the vendor's lien. All costs will be taxed against the defendants in error.