**Gene Earl PALMER and Emma Mae Palmer, Appellants,**

v.

**Clarence Earl PALMER, Jr., Individually and as Guardian of the Estate of Lola Lucille Palmer, Appellee.**

No. 6–91–124–CV.

Court of Appeals of Texas, Texarkana.

May 19, 1992.

Guy N. Harrison, Mobley, Green, Harrison & Sparks, Longview, W. F. Palmer, Huffman, Palmer & Neal, Marshall, for appellant.

Dennis M. McKinney, Steven Norris, Harbour, Kenley, Boyland, Smith, Harris, Longview, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

This is an action on an installment note secured by a deed of trust. Gene and Emma Palmer appeal from a judgment in favor of Clarence Earl Palmer, Jr., individually and as guardian of the Estate of Lola Lucille Palmer, a person of unsound mind. (Clarence Palmer).

In 1974, Gene and Emma Palmer purchased real property from Gene Palmer's parents, Lola Lucille Palmer and Clarence Palmer, Sr., giving a promissory note of $45,000 payable in fifteen annual installments of $3,000. The note was secured by a deed of trust. Clarence Palmer, Sr. died intestate in 1976. Gene and Emma Palmer stopped making payments in 1982, after the first seven installments.

In October 1989, Clarence Palmer, Gene's brother, was appointed guardian of the person and estate of Lola Lucille Palmer. In December 1989, Clarence Palmer made a demand for payment. In response, Gene and Emma Palmer brought a declaratory judgment action seeking a declaration that four of the annual installments were barred by limitations. Clarence Palmer counterclaimed for the balance due on the note plus interest, costs, and attorney's fees, and also requested foreclosure on the deed of trust and an order for the sale of the property. The trial court granted Clarence Palmer all requested relief, finding that no installments due under the note were barred by limitations.

Gene and Emma Palmer contend the trial court erred in overruling their limitations defense as to installment payments that were due more than four years prior to the filing of suit. They also complain that the trial court's award of attorney's fees was excessive because it was based on an incorrect balance due. Clarence Palmer urges that the appeal was groundless and taken for delay and asks this Court to award sanctions pursuant to TEX.R.APP.P. 84.

Gene and Emma Palmer contend that TEX.CIV.PRAC. & REM.CODE ANN. § 16.-004 (Vernon 1986) is the applicable statute of limitations. The pertinent portions of Section 16.004 read:

(a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues:

. . . .

(3) Debt.

In construing this statute, the courts have held that if a note is payable in installments, the statute of limitations begins to run against each installment when it comes due. *Gabriel v. Alhabbal*, 618 S.W.2d 894, 897 (Tex.Civ.App.–Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Goldfield v. Kassoff*, 470 S.W.2d 216, 217 (Tex.Civ.App.–Houston [14th Dist.] 1971, no writ).

The trial court ruled, however, that TEX. CIV.PRAC. & REM.CODE ANN. § 16.035(e) (Vernon 1986) applies to the present case and modifies the general rule stated in *Goldfield* and *Gabriel*. Section 16.035 is entitled "Lien Debt on Real Property" and reads:

(a) A person must bring suit for the recovery of real property under a lien debt or the foreclosure of a lien debt not later than four years after the day the cause of action accrues.

(b) A sale of real property under a power of sale in a mortgage or deed of trust that secures a lien debt must be made not later than four years after the day the cause of action accrues.

. . . .

(d) On the expiration of the four-year limitations period, it is conclusively presumed that a lien debt has been paid and the lien debt and a power of sale to enforce the lien become void at that time.

(e) If a series of notes or obligations or a note or obligation payable in installments is secured by a lien on real property, *the four-year limitations period* does not begin to run until the maturity date of the last note, obligation, or installment.

(f) In this section, "lien debt" means:

(1) a superior title retained by a vendor in a deed of conveyance or a purchase money note; or

(2) a vendor's lien, a mortgage, a deed of trust, a voluntary mechanic's lien, or a voluntary materialman's lien on real estate, securing a note or other written obligation.

(Emphasis added.) Subsection (e) appears to take this case out of the general rule that the statute begins to run on each installment when it comes due.

Gene and Emma Palmer contend, however, that Section 16.035 applies to the enforceability of the deed of trust, not to the underlying debt. They contend that a creditor holding a deed of trust, or some other type of lien debt, has four years after the final maturity date to foreclose on the real property, but if the creditor elects to sue for a money judgment under the promissory note, installments due more than four years prior to the filing of suit will be uncollectible.

Subsection (e) is ambiguous. The term *the four-year limitations period* could refer only to the action to obtain the real property, or it could be construed to refer to all payment obligations. In *Uvalde Rock Asphalt Co. v. Gardner*, 153 S.W.2d 604 (Tex.Civ.App.–Galveston 1941, no writ), the trial court found that Tex.Rev.Civ.Stat. Ann. art. 5520 (now Section 16.035) was applicable only in an action to foreclose a deed of trust or mortgage on real estate. The court of appeals reversed, holding that Article 5520 was not rendered inapplicable because the plaintiff sued for a money judgment on the note alone rather than seeking foreclosure of the lien. "[T]hat statute, by its terms, plainly seems to apply to all contracts creating liens upon real estate and providing for the underlying debts to be paid in installments, irrespective of the fact that the suit brought thereon does not seek foreclosure of the lien." *Gardner*, 153 S.W.2d at 607; *see also Uvalde Rock Asphalt Co. v. Cartledge*, 154 S.W.2d 314 (Tex.Civ.App.–Galveston 1941, no writ). The applicability of Article 5520 (now Section 16.035) is not limited to suits to recover land or enforce a lien. *Yates v.*

*Darby*, 133 Tex. 593, 131 S.W.2d 95, 100 (1939).

The history of this statute, which was originally enacted in 1905, sheds light on the legislature's intent with regard to subsection (e). In *Citizens' Nat. Bank of Hillsboro v. Graham*, 117 Tex. 357, 4 S.W.2d 541 (1928), the Supreme Court construed a version of the statute which read as follows:

[I]f several obligations are secured by said deed of conveyance, the same may be enforced at any time prior to four years after the note or obligation last maturing has matured and may be enforced as to all notes not then barred by the four years' statute of limitations.

The court stated that if the statute had stopped after the word *matured,* no note or installment would be barred until four years after the maturity of the final note or installment. The court held, however, that the concluding clause, "and may be enforced as to all notes not then barred by the four years' statute of limitations" meant that notes were barred if they had matured more than four years prior to the maturity of the final note of a series. *Graham*, 4 S.W.2d at 542.

The statute was amended in 1931, and the concluding clause was dropped. This amendment was intended to clarify when limitations begin to run on a series of notes and notes payable in installments. *See Yates*, 131 S.W.2d at 99. In *Broussard v. Beaumont Rice Mills*, 115 S.W.2d 1235, 1237 (Tex.Civ.App.–Beaumont 1938, no writ), the court held that under the statute as amended, no installments were barred until four years after the final installment matured. Thus, since suit was filed within four years after the final installment was due, an installment that was due nine years prior to the filing of suit was not barred by limitations. *Broussard*, 115 S.W.2d at 1237. Several other cases also construed the amended statute to mean that no installments were barred until four years after the final installment matured.[1]

---

1. *See also, Hughes v. Stovall*, 135 S.W.2d 603, 606 (Tex.Civ.App.–Amarillo 1939, writ dism'd judgm't cor.); *Hutton v. Harwell*, 95 S.W.2d 467, 470 (Tex.Civ.App.–Fort Worth 1936, no writ); *Kuykendall v. Taylor*, 89 S.W.2d 297, 299 (Tex. Civ.App.–Dallas 1935, no writ); *Shephard v.*

■ The statute has been reenacted twice since the *Uvalde Rock Asphalt* cases were decided. When a statute is reenacted without material change, it is presumed that the Legislature knew and adopted the interpretation placed on the original act and intended the new enactment to receive the same construction. *Coastal Industrial, Etc. v. Trinity Portland*, 563 S.W.2d 916, 918 (Tex.1978). A mere change of phraseology in the revision of a statute in force before will not change the law previously declared, unless it indisputably appears the Legislature intended a change. *Ennis v. Crump*, 6 Tex. 34, 35 (1851).

The statute was reworded in 1945. Act of 1945, 49th Leg., ch. 278, 1945 Tex.Gen. Laws 441. The primary purpose of the 1945 revision was to address issues surrounding bona fide purchasers. Gene and Emma Palmer have not suggested that the 1945 revision changed the meaning or effect of the law.

In 1985, the statute was again reworded, a definition of lien debt was added, and the statute was placed in the Texas Civil Practice and Remedies Code. Act of 1985, 69th Leg., ch. 959, § 1, 1985 Tex.Gen.Laws 3256. Gene and Emma Palmer argue that the 1985 revision, and especially the definition of lien debt, justifies reconsidering the effect the courts have given this law.

In TEX.CIV.PRAC. & REM.CODE ANN. § 1.001 (Vernon 1986), it is provided that the Act is "without substantive change." *See also* Robert I. Kelley, *Foreward to Tex.Civ. Prac. & Rem.Code Ann.*, vol. 1, p. IX (1984). When revising a statute for the Legislature, the Texas Legislative Council may not alter the sense, meaning, or effect of the statute. TEX.GOV'T.CODE ANN. § 323.007(b) (Vernon 1988). The revisor's note to Section 16.035 states that the definition of lien debt was added as a drafting convenience and derives from Article 5520. It is not new law. No substantive significance can be attached to the 1985 revision and codification.

■ Gene and Emma Palmer's argument that Section 16.035(e) applies only to a suit to foreclose a lien and not to a suit on the underlying debt fails to recognize a basic concept of lien law. A lien is an incident of, and is inseparable from, the debt. *University Savings and Loan Ass'n v. Security Lumber Co.*, 423 S.W.2d 287 (Tex.1967). In *University Savings*, the court held that because a cause of action for debt was not barred, then neither was an action to foreclose the lien. *University Savings Ass'n*, 423 S.W.2d at 292. Stated conversely, if an action to foreclose the lien is not barred, then neither is an action to collect the debt.

Considering the interpretation given Section 16.035(e) by Texas courts, and its reenactment by the Legislature, the trial court correctly held that no installments were barred by limitations. The first three points of error are overruled.

The parties stipulated that ten percent of the judgment would be a reasonable attorney's fee. Because no installments were barred by limitations, the amount of the judgment is correct, and the amount awarded as attorney's fees is also correct. Gene and Emma Palmer's last two points of error are overruled.

Counsel for the appellants made a cogent and reasonable argument for a different interpretation of the statute and one that may have been embraced by this Court had we been writing on a clean slate. In such circumstances, sanctions are inappropriate, and we decline to impose them. The cross-point of error is overruled.

The judgment is affirmed.

*Woodson Lumber Co.*, 63 S.W.2d 581, 584 (Tex. Civ.App.–Waco 1933, no writ).